IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MINDALE FARMS CO., | ) CASE NO.  5:23-cv-00424 |
| ) | |
| Plaintiff, | ) |
| ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) |
| ) | |
| CITY OF TALLMADGE, OHIO, | ) **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. | ) |
| ) | |

Before the Court is Defendant City of Tallmadge's motion for judgment on the pleadings. (Doc. No. 21.)  In its motion, the City argues that Plaintiff Mindale Farms Co. fails to state a claim and lacks standing to pursue one of its claims.  (*Id.*)  Mindale Farms opposed the City's motion.  (Doc. No. 26.)  The City then replied.  (Doc. No. 27.)  Intervenors in this case also joined the City's motion.  (Doc. No. 33.)  For the following reasons, the Court **GRANTS** the City's motion for judgment on the pleadings.  Mindale Farms' claims are **DISMISSED**. Mindale Farms may, however, seek leave to amend.

I. **Background**

Plaintiff Mindale Farms owns several undeveloped parcels of land within the City of Tallmadge.  (Doc. No. 1 at ¶ 1.)  At issue in this case is a 124-acre parcel near the eastern edge of Tallmadge.  (*Id.* at ¶ 24.)  This parcel used to be a working farmstead.  (*Id.* at ¶ 1.)  But farming is no longer possible on that property because the odors and noises from farming are incompatible with the recent growth of nearby residential subdivisions.  (*Id.*)  Consequently, Mindale Farms sought another use for this parcel.  Together with a real estate developer, Mindale Farms planned to develop this parcel into a residential subdivision designed to attract senior citizens as residents.  (*Id.* at ¶¶ 39–41.)

According to Mindale Farms, though, such a development plan was not feasible under the parcel's current zoning. (*Id.* at ¶¶ 30–38.) So, Mindale Farms and its developer partner filed a rezoning application with the City. (*Id.* at ¶ 42.) The application asked the City to rezone Mindale Farms' parcel from an R-1 District to an R-6 District. (*Id.* at ¶ 44.) This would allow Mindale Farms and its developer partner to build homes on smaller lots, purportedly the only way that a residential subdivision would be economically viable. (*Id.* at ¶¶ 44, 53.)

On March 10, 2022, the Tallmadge City Council held a hearing on Mindale Farms' rezoning application. (*Id.* at ¶ 64.) At the hearing, two councilmembers expressed their disapproval of Mindale Farms' development plan. One councilmember allegedly said that the "55 and up portion with the smaller lot size" was "just too close," and that she did not "think that's Tallmadge." (*Id.* at ¶ 68.) Another councilmember allegedly said that the "housing side of it is what makes it unattractive," and that he "want[ed] to see houses that have wider frontages." (*Id.* at ¶ 69 (alteration in original).) Following these comments, the City Council denied Mindale Farms' application. (*Id.* at ¶ 70.)

Shortly afterwards, on May 12, 2022, the City Council held a hearing to repeal the R-6 District altogether. (*Id.* at ¶ 83.) At the end of the hearing, the City Council unanimously repealed the R-6 District. (*Id.* at ¶ 86.)

Now, Mindale Farms challenges the City's rezoning denial and subsequent repeal of the R-6 District. Mindale Farms claims that the City's actions violated equal protection, constituted a regulatory taking, constituted First Amendment retaliation, and violated both the Fair Housing Act ("FHA") and Americans with Disabilities Act ("ADA"). (*Id.* at ¶¶ 97–130.)

**II. Legal Standard**

When considering failure to state a claim on a Rule 12(c) motion for judgment on the pleadings, courts apply a standard almost identical to the one for Rule 12(b)(6) motions to

dismiss. *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) (citations omitted). This means that, to survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lindke v. Tomlinson*, 31 F.4th 487, 495–96 (6th Cir. 2022) (quoting *Middlebrooks v. Parker*, 15 F.4th 784, 789 (6th Cir. 2021)).

In addition to failure to state a claim, the City argues that Mindale Farms lacks standing to assert its FHA and ADA claims. The Court analyzes the City's standing argument under the standard for Rule 12(b)(1). *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). Rule 12(b)(1) motions can make either facial attacks questioning the sufficiency of the pleadings, or they can make factual attacks that raise evidence. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Facial attacks require the Court to assume the truth of the pleaded allegations, "which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id*. Here, the City raises a purely legal, facial attack on Mindale Farms' standing, so the Court applies the Rule 12(b)(6) standard that it articulated above. *Id.*

### III. Analysis

#### A. Documents Outside the Pleadings

Before turning to Mindale Farms' claims, the Court begins by addressing whether it can consider the exhibits that the City attached to its motion for judgment on the pleadings. (Doc. Nos. 21-1 to -8.) These exhibits fall into two general categories: Mindale Farms' rezoning application and meeting minutes from official City Council and Zoning Commission meetings.

Normally, on a pleading attack like the one here, courts may not consider documents outside the pleadings. *Flanigan v. Westrock Servs., LLC*, --- F. Supp. 3d ----, No. 5:23-cv-00296, 2023 WL 8257855, at *2 (N.D. Ohio Nov. 29, 2023) (citation omitted). However, there are two exceptions to this general rule. First, courts may consider documents that are "referred to in the plaintiff's complaint and [are] central to [the plaintiff's] claims." *Id.* (quoting *Life*

*Changing Events, LLC v. Heitkoetter*, No. 5:19-cv-02057, 2020 WL 7769721, at *3 (N.D. Ohio Dec. 30, 2020)). Second, courts may take judicial notice of documents—and therefore consider those documents on a pleading attack—under Federal Rule of Evidence 201. Specifically, courts may take judicial notice of facts that are either (a) "generally known within the trial court's territorial jurisdiction," or (b) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Under these rules, the Court can consider Mindale Farms' rezoning application because Mindale Farms refers to the application in the complaint (*e.g.*, Doc. No. 1 at ¶¶ 42–48) and because the City's denial of the application forms the basis for most of Mindale Farms' claims.

But the Court cannot consider the meeting minutes. Although courts may typically take judicial notice of public records like the meeting minutes at issue here, *In re Keithley Instruments, Inc., Derivative Litig.*, 599 F. Supp. 2d 908, 917 (N.D. Ohio 2009) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)), judicial notice is inappropriate in this instance. Courts may take notice of public documents themselves, but courts cannot take notice of facts within those documents unless those facts independently satisfy Rule 201. *See In re Upstart Holdings, Inc. Sec. Litig.*, No. 2:22-cv-02935, 2023 WL 6379810, at *8 (S.D. Ohio Sept. 29, 2023) (collecting cases). The City essentially uses the meeting minutes as transcripts. (*See, e.g.*, Doc. No. 21 at 10.) It is not clear, though, whether the minutes are verbatim transcripts or if they are paraphrases. Thus, it is neither "generally known" nor "readily determined" under Rule 201 whether the minutes reflect the exact statements that were made, and the Court cannot consider the minutes for that purpose.

B. **Equal Protection**

In its first claim, Mindale Farms alleges that the City violated both federal and Ohio equal protection guarantees under a class-of-one theory. Specifically, Mindale Farms points to another property called Ripley Farm. Mindale says that Ripley is similar to the parcel at issue in this case because Ripley is an old farm surrounded by newer residential homes. (Doc. No. 1 at ¶ 22.) Yet, despite these alleged similarities, the City granted an application to rezone Ripley into an R-6 District even though the City denied Mindale's request to rezone its parcel into an R-6 District. (*Id.* at ¶ 23.)

Because Ohio equal protection is "to be construed and analyzed identically" to federal equal protection, *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 936 N.E.2d 944, 951 (Ohio 2010) (citation omitted), the Court analyzes Mindale Farms' equal protection claims under only federal law. Under federal law, a plaintiff making class-of-one claims must demonstrate two elements: (1) that the government "treated the plaintiff differently from others similarly situated," and (2) that "there is no rational basis for such difference in treatment." *Andrews v. City of Mentor*, 11 F.4th 462, 473 (6th Cir. 2021) (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)).

The Court begins with the "similarly situated" element. This element does "not demand exact correlation, but [] instead seek[s] *relevant* similarity." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012) (emphasis added) (quoting *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)). At the pleading stage, the similarity requirement is further relaxed because plaintiffs need not "allege every fact relevant to whether the cited comparators are similarly situated in all relevant respects." *Muslim Cmty. Ass'n of Ann Arbor & Vicinity v. Pittsfield Charter Twp.*, 947 F. Supp. 2d 752, 767 (E.D. Mich. 2013). But that does not render similarity toothless at the pleading stage. The alleged similarities must still be sufficient to move a

conclusion of "relevant similarity" from the realm of the possible to the realm of the plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not enough to plead some small number of similarities that are "merely consistent with" two properties being similarly situated; the alleged similarities must be enough for a court to infer that the two properties are in fact similarly situated. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

In this case, Mindale Farms' allegations are merely consistent with its parcel being similarly situated to Ripley Farms. Mindale Farms alleges only two similarities. First, it alleges that both properties are a little over 100 acres in size. (Doc. No. 1 at ¶¶ 1, 21.) Second, Mindale Farms claims that both properties are former farmland where farming is no longer viable due to nearby residences. (*Id.* at ¶ 1, 22.) But these two generic similarities say little about the two properties' characteristics. The two 100-plus-acre parcels of former farmland in this case could be very different from each other in meaningful ways. There could be significant geographical differences between the two parcels. The residences surrounding those parcels could also be different. Or the development plans for the two parcels might differ. While Mindale Farms did not need to catalog every relevant similarity in its complaint, the few similarities that Mindale Farms does raise are not enough for the Court to infer that the two properties are sufficiently similar in relevant ways. Put differently, Mindale Farms' allegations do not show that similarity between the two properties is plausible as opposed to merely possible.

Even if Mindale Farms had successfully pleaded similarly situated properties, Mindale Farms' equal protection claim still fails on the second element. "[C]ourts generally view class-of-one claims with skepticism given the potential to provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Shavers v. Almont Twp.*, 832 F. App'x 933, 937 (6th Cir. 2020) (cleaned up) (quoting *Loesel v. City of*

*Frankenmuth*, 692 F.3d 452, 461–62 (6th Cir. 2012)). As such, plaintiffs raising class-of-one claims bear a particularly "heavy burden" to show that there is no rational basis for different treatment. *Id.* (quoting *Loesel*, 692 F.3d at 462). A plaintiff can meet that burden in only two ways. The plaintiff must either (a) "negat[e] every conceivable basis which might support the government action," or (b) "demonstrat[e] that the challenged government action was motivated by animus or ill-will." *Warren*, 411 F.3d at 711 (internal quotations marks omitted) (citations omitted).

Mindale Farms has not negated every conceivable rational basis for the denial of rezoning. As the City argues, the decision to deny rezoning can be explained as an effort to preserve community aesthetics. (*See* Doc. No. 27 at 10 n.6.) Statements from City councilmembers alleged in Mindale Farms' own complaint support this aesthetics-based rationale. For example, one of the City's councilmembers purportedly said that Mindale Farms' proposed housing development "with the smaller lot size" was "just too close together." (Doc. No. 1 at ¶ 68.) And another councilmember criticized Mindale Farms' proposed development because the "housing side . . . makes it unattractive," and because he "want[ed] to see houses that have wider frontages." (*Id.* at ¶ 69 (alteration in original).) Taken together, these statements suggest that the City was concerned a residential development with smaller lot sizes would be aesthetically unpleasing. And both the Supreme Court and Sixth Circuit have consistently recognized that aesthetic concerns are a rational basis for government action. *Shoemaker v. City of Howell*, 795 F.3d 553, 567 (6th Cir. 2015) (collecting cases).

Nor has Mindale Farms alleged facts showing that the City's denial of rezoning was due to animus or ill-will towards Mindale Farms or any particular group of people. The closest that Mindale Farms comes to pleading animus is through its allegations is that a councilmember

referred to the "55 and up portion with the smaller lot size." (Doc. No. 1 at ¶ 68.) From Mindale Farms' perspective, this statement shows age-based animus. But the statement says nothing derogatory about older individuals. In context, the reference to the "55 and up portion" is simply an identifier for the portion of Mindale Farms' proposed development catered to senior citizens. (*Id.* at ¶ 3.) Mindale Farms is the one that proposed such an age-based distinction in its development plan, not the City. Moreover, the councilmember speaking about the "55 and up portion" makes clear that her concern is not with the age of the proposed residents, but rather with the proposed houses being "just too close." (*Id.* at ¶ 68.)

The Court concludes that Mindale Farms has not pleaded a similarly situated property and has not pleaded that the City's denial of rezoning lacked a rational basis. Therefore, the Court dismisses Mindale Farms' equal protection claims.

### C. Regulatory Taking

Mindale Farms claims that the City unlawfully effected a regulatory taking by denying Mindale Farms' application for rezoning and then subsequently repealing the R-6 District altogether. Again, Mindale Farms raises these claims under both the federal and Ohio constitutions. Like with equal protection, Ohio regulatory takings law mimics federal regulatory takings law. *See State ex rel. Shelly Materials, Inc. v. Clark Cnty. Bd. of Comm'rs.*, 875 N.E.2d 59, 64 (Ohio 2007) (applying federal regulatory takings law when analyzing the Ohio Constitution's takings provisions). Thus, the Court applies federal law in this Order.

There are two types of regulatory takings. First, a categorical regulatory taking occurs "[w]here a governmental action deprives property owners of 'all economically beneficial uses' of their property." *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)). Second, a partial regulatory taking can occur when a government action limits property rights but does not totally

deprive property of all value. *Id.* Mindale Farms does not argue that there was a categorical taking, so the Court focuses on the test for partial takings.

Courts assess partial takings under the balancing test in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). *Penn Central* instructs courts to balance three factors: (1) "[t]he economic impact of the regulation"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action."[1] *Id.* at 124. Applying the *Penn Central* test, the Court finds that the first factor weighs in favor of finding a partial taking, but the final two factors weigh against. Consequently, Mindale Farms has not pleaded a partial regulatory taking.

First, Mindale Farms has successfully pleaded that the City's denial of rezoning prevents Mindale Farms from realizing an economically valuable use of the parcel at issue. As Mindale Farms alleges, residential development is only feasible under the R-6 District. Under current zoning, which requires large lot sizes, it is not feasible to develop residences due to difficulty navigating existing geographic and infrastructure obstacles, cost-prohibitive installation of sanitary systems, and challenges related to riparian and wetlands areas. (Doc. No. 1 at ¶¶ 30, 32–36.) So as alleged, by denying Mindale Farms' rezoning application and repealing the R-6

---

[1] As a threshold matter, "no takings claim can proceed without a valid property interest." *Andrews*, 11 F.4th at 469 (citing *Wyatt v. United States*, 271 F.3d 1090, 1097 (Fed. Cir. 2001)). Neither party in this case has addressed this threshold requirement, appearing to assume that the zoning dispute at issue must have implicated at least one of Mindale Farms' property interests. But the parcel at issue was never zoned as an R-6 District, so Mindale Farms never had a right to develop that parcel under the rules for R-6 Districts. (Doc. No. 1 at ¶ 30.) And "deprivation of the right to use property for a particular purpose is not a 'taking' if that right was never a part of the titleholder's bundle of rights to begin with." *Andrews*, 11 F.4th at 472 (citing *Lucas*, 505 U.S. at 1027). Still, a "searching inquiry into 'background principles of [Ohio's] law of property and nuisance'" may reveal that some property right has been affected here. *Id.* (quoting *Lucas*, 505 U.S. at 1029). Because the parties did not brief the issue, though, the Court does not address it further in this Order.

District, the City effectively prevented Mindale Farms from turning its parcel into a residential development.

However, Mindale Farms has not alleged that the City's actions disrupted "investment-backed expectations."  For one, "[a] reasonable restriction that predates a landowner's acquisition [] can be one of the objective factors that most landowners would reasonably consider in forming fair expectations about their property."  *Murr v. Wisconsin*, 582 U.S. 383, 398 (2017).  By extension, reasonable restrictions that predate a challenged government action are also a factor to consider when assessing whether the challenged government action interfered with the property owner's expectations.  Mindale Farms' parcel was never zoned as an R-6 District, so Mindale was always on notice that it could not build a residential development relying on the small lot sizes allowed in an R-6 District. (Doc. No. 1 at ¶ 30.)  It is not reasonable for Mindale Farms to expect that it could develop its land as an R-6 District when that expectation depends on a discretionary City decision to rezone Mindale Farms' property.  And this lack of reasonable expectation "weigh[s] heavily against [property owners]."  *Andrews*, 11 F.4th at 473.

Further, even if Mindale Farms' expectations were reasonable, there is no allegation that they were "investment-backed."  While the complaint alleges that Mindale Farms intended to partner with a real estate developer to create a new residential subdivision (Doc. No. 1 at ¶ 40), there are no allegations that either Mindale Farms or the real estate developer had invested any money or assets into the venture beyond filing a rezoning application.

Finally, the "character of the governmental action" does not support a partial taking.  This third *Penn Central* factor looks at whether the challenged government action "can be characterized as a physical invasion by government," *Tenn. Scrap Recyclers*, 556 F.3d at 455

(quoting *Penn Central*, 438 U.S. at 124), or whether the challenged action "lacks a legitimate public purpose." *Id.* (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485–86 (1987)).  In this case, the lot-size restrictions at issue are unlike a physical invasion.  And as the Court found in its equal protection analysis, the City's actions are justified by legitimate aesthetic purposes.

As a whole, and especially given the strong weight put on lack of investment-backed expectations, the Court concludes that Mindale Farms has failed to plead a partial regulatory takings claim.  So, the regulatory takings claim is dismissed.

### D.  First Amendment Retaliation[2]

Mindale Farms alleges that the City retaliated against it for exercising the right to petition.  Mindale Farms says that it petitioned the City by filing its rezoning application (Doc. No. 1 at ¶ 112), and that the City retaliated by repealing the R-6 District completely.  (Doc. No. 26 at 19.)

To state a First Amendment retaliation claim, a plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*,

---

[2] Mindale Farms raises retaliation claims under both the federal and Ohio constitutions.  However, there may not exist a private cause of action for retaliation under the Ohio Constitution.  *Cf. Hagedorn v. Cattani*, 715 F. App'x 499, 508–09 (6th Cir. 2017) (the Ohio Constitution's free speech clause does not create a private cause of action).  But because both parties appear to assume that a state-law retaliation claim exists, and that it mirrors the federal retaliation claim, the Court assumes that a state-law claim exists as well, and the Court analyzes both claims under the federal standard.

175 F.3d 378, 394 (6th Cir. 1999) (en banc). Here, Mindale Farms has established the first two elements, but not the third.

To begin, Mindale Farms' rezoning application is protected First Amendment petitioning activity. *Lifestyle Communities, Ltd. v. City of Worthington*, No. 2:22-cv-1775, 2023 WL 5162656, at *3 (S.D. Ohio Aug. 11, 2023) (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010)). The City tries to avoid this conclusion by arguing that Mindale Farms did not file the application; rather, the City claims that Mindale's partner, the real estate developer, filed the application. (Doc. No. 21 at 19.) But Mindale Farms plainly alleges that it filed the rezoning application along with its developer partner. (Doc. No. 1 at ¶¶ 3, 42.) And the rezoning application itself identifies Mindale Farms as an applicant. (Doc. No. 21-1.) Thus, Mindale Farms satisfies the first element.

Mindale Farms also satisfies the second element. Courts have found that mere delay tactics could deter a person of ordinary firmness from exercising her right to petition. *Holzemer*, 621 F.3d at 524. Against that backdrop, eliminating an entire zoning classification is certainly enough to show deterrence at the pleading stage.

However, eliminating a zoning classification is only retaliation if the City did so *because* of Mindale Farms' petitioning. It is on this third element that Mindale Farms' retaliation claim falters since, based on the allegations, it is implausible that the City changed its ordinances just to spite Mindale Farms. The only allegation supporting causation is that the City repealed the R-6 District approximately five months after Mindale Farms first submitted its rezoning application. (Doc. No. 1 at ¶¶ 42, 83, 86.) But it is well-established that "temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." *Cooperrider v. Beshear*, No. 3:22-cv-00016-GFVT, 2023 WL 2612603, at *8 (E.D. Ky. Mar. 23,

2023) (quoting *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007)).  Other than temporal proximity, Mindale Farms offers no allegations suggesting that the City or City Council were hostile to Mindale Farms itself, or hostile to Mindale Farms' protected petitioning activity.  Although councilmembers expressed disagreement with Mindale Farms' application and with the R-6 District overall, those disagreements are policy disagreements over the best use of land.  (*See* Doc. No. 1 at ¶¶ 68–69.)  Repealing the R-6 zoning classification because of evolving policy positions rather than hostility to Mindale Farms' protected petitioning activity is not retaliation.

Accordingly, the Court dismisses Mindale Farms' retaliation claims.

### E.  FHA and ADA

Mindale Farms claims that the City's denial of rezoning reduced the housing available to disabled individuals and therefore created an unlawful disparate impact under both the FHA and ADA.  The City challenges this final claim on standing and zone-of-interests grounds, and for failure to state a claim.  (Doc. No. 21 at 4–12.)

#### 1.  Constitutional Standing

Before a plaintiff can raise a claim in court, it must establish that it has the standing to do so.  At its core, standing refers to the "essential and unchanging" constitutional limits that stem from "the case-or-controversy requirement of Article III."  *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  The "irreducible constitutional minimum of standing contains three elements."  *Lujan*, 504 U.S. at 560.  Specifically, Mindale Farms must show: (1) that it suffered an "injury in fact"; (2) that there is a "causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 560–61 (internal quotation marks omitted) (citations omitted).

Mindale Farms easily meets this bar. Because Mindale was unable to develop its property as it hoped after the City denied the rezoning application, Mindale Farms suffered a concrete injury. (Doc. No. 1 at ¶¶ 30–38.) That injury flows directly from the City's challenged zoning actions. And the Court can redress that injury, whether through injunctive relief allowing Mindale Farms to develop its land, or through damages compensating Mindale Farms for lost property value. Thus, Mindale Farms has constitutional standing.

### 2. Zone of Interests

In addition to its constitutional standing argument, the City argues that Mindale Farms lacks "prudential standing" because Mindale Farms does not fall within the "zone of interests" regulated by the FHA and ADA. (Doc. No. 21 at 4.) Although the City calls this a standing argument, that is a misnomer. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). Zone-of-interests analysis is a matter of statutory interpretation asking whether the statutes in question extend to plaintiffs like Mindale Farms. *Id.* at 128–29.

Binding precedent has already answered that interpretative question for both the FHA and ADA. Standing under the FHA "extend[s] to the full limits of Art. III," so there are no prudential or zone-of-interests limits on the right to sue under the FHA. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 n.9 (1979). Similarly, zone-of-interests issues do not prevent Mindale Farms from suing under the ADA based on the City's refusal to allow Mindale Farms to develop housing for disabled individuals. *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002); *see also Turner v. City of Englewood*, 195 F. App'x 346, 349, 351–52 (6th Cir. 2006) (finding that a plaintiff who applied for rezoning to operate a group home for individuals requiring adult supervision could sue under the ADA when the city denied that application); *Pac. Shores Props.,*

*LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013) ("The ADA provides the Group Homes with a cause of action, even though they are not themselves disabled.") (citations omitted). So, neither prudential nor zone-of-interests concerns defeat Mindale Farms' FHA and ADA claims.

### 3. Failure to State a Claim

Having resolved the threshold issues about Mindale Farms' right to sue under the FHA and ADA, the Court turns to Mindale Farms' statutory claims.

Both the FHA and ADA protect against disability-based discrimination, not age-based discrimination. However, on its face, Mindale Farms' development plan was meant to cater to those who are 55 or older, not those who are disabled. So, to connect the age-related issues in this case to the protected class of disability, Mindale Farms relies on a multistep inferential chain: Mindale Farms begins by observing that its proposed development is meant to serve those who are 55 or older, so the City's denial of Mindale's rezoning application allegedly leads to a shortage of housing for older individuals. (Doc. No. 1 at ¶ 124.) Then, Mindale Farms connects age to disability by bringing up a Centers for Disease Control statistic that 40% of those who are 65 or older have a disability. (*Id.* at ¶ 92.) According to Mindale Farms, this means that a lack of senior housing is equivalent to a lack of housing for those with disabilities. (*Id.* at ¶ 124.)

Essentially, Mindale Farms tries to use age as a proxy for disability. But even though "many individuals become disabled as they age, many do not, and [] being old is not, *per se*, equivalent to being disabled." *Budnick v. Town of Carefree*, 518 F.3d 1109, 1115 (9th Cir. 2008). Indeed, the problem with Mindale Farms' logic is that, by relying on a generic statistic that would apply in virtually any circumstance, old age would almost always be a proxy for disability. In effect, Mindale Farms' logic rewrites both the FHA and ADA to include age as a

protected class.³  Courts "do not—[and] cannot—add provisions to a federal statute." *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010).  So, Mindale Farms cannot use age as a proxy for disability.

Even if Mindale Farms could use age as a proxy, it would need to demonstrate a far closer nexus to disability than it has done.  Based on Mindale Farms' own statistics, a majority of those 65 or older are *not* disabled.  And Mindale Farms' statistics refer to the 65 and up population while Mindale Farms' development is meant for 55 and up individuals.  The connection between disability and age in these circumstances is too loose to support FHA or ADA claims.

For these reasons, the FHA and ADA claims are dismissed.

### F.  Declaratory Relief

Because each of Mindale Farms' substantive underlying claims fails, the Court also dismisses Mindale Farms' request for declaratory relief.

## IV. Conclusion

The Court **GRANTS** the City's motion for judgment on the pleadings and **DISMISSES** all claims.  If Mindale Farms wishes to amend its complaint to address the deficiencies identified in this Order, it must move for leave to amend within **thirty (30) days**.  If Mindale Farms moves for leave to amend, it should attach its proposed amended complaint and a redline comparing the

---

³ Congress is well-aware of age as a separate protected class.  For example, it passed the Age Discrimination in Employment Act specifically to protect against age discrimination.  29 U.S.C. § 621 et seq.  The fact that Congress recognized age as a separate protected class and declined to include it in the FHA or ADA is strong evidence that courts should not interpret the FHA or ADA in a way that would effectively extend those statutes' reaches to age.  *Cf. Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

new and old complaints to its motion for leave.  If Mindale Farms does not move for leave to amend within the time allowed, the Court will enter judgment accordingly.

    **IT IS SO ORDERED.**

**Date:** March 20, 2024

                                                      BRIDGET MEEHAN BRENNAN
                                                      UNITED STATES DISTRICT JUDGE