UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MINDALE FARMS CO., | ) | CASE NO. 5:23-CV-00424 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CITY OF TALLMADGE, OHIO, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is Plaintiff Mindale Farms Co.'s motion for leave to file an amended complaint. (Doc. 38.) Defendant City of Tallmadge opposed (Doc. 40-2), and Plaintiff Mindale Farms Co. replied (Doc. 45.) For the reasons explained below, the motion is GRANTED in part and DENIED in part.

I.     **BACKGROUND**

    A.     **Factual Background**

Plaintiff Mindale Farms Co. ("Mindale Farms") owns approximately 124 acres of undeveloped land in the City of Tallmadge ("Tallmadge"). (Doc. 38-2 ¶ 1.) Trina Carter, the principal of Mindale Farms, acquired the property through Mindale Farms in 1999. (*Id.* ¶ 32.) The parcel used to be a working farmstead. (*Id.* ¶ 1.) Farming is no longer possible on the land because of the growth of nearby residential subdivisions. (*Id.*) Mindale Farms sought another use for the property and partnered with a real estate developer to create a residential subdivision on the land. (*Id.* ¶¶ 43–45.)

In Tallmadge, residential zoning was split into two districts, R-1 and R-2, which required large lots. (*Id.* ¶ 15.) Mindale Farms' property was zoned as a R-1 district. (*Id.* ¶ 33.) Mindale Farms alleges it is not economically feasible to develop the property under either the current zoning district or the R-2 district because of challenges with the terrain and because the homes would be too large and expensive. (*Id.* ¶¶ 34, 37–42, 56.) Thus, Mindale Farms alleges it worked with Tallmadge to create a new district, classified as R-6, specially to develop the property to make the project economically feasible. (*Id.* at ¶¶ 16–18, 21.) The R-6 zoning district allowed for the construction of homes on smaller lots. (*Id.* ¶¶ 16–18.) Tallmadge adopted the new zoning district in 2011. (*Id.* ¶ 16.)

On December 17, 2021, Mindale Farms applied to rezone the property as a R-6 zoning district. (*Id.* ¶ 46.) Before Mindale Farms did so, another property—known as Ripley Farms—applied for rezoning to a R-6 zoning district. (*Id.* ¶¶ 22–24.) Ripley Farms was a 103-acre former farm that ceased operations because of residential properties nearby. (*Id.* ¶¶ 23–24.) Mindale Farms alleges the Ripley Farms property is geographically and topographically similar to the Mindale Farms property. (*Id.* ¶ 24.) In December 2017, city council approved the rezoning of the Ripley Farms property into a R-6 zoning district. (*Id.* ¶ 25.) Ripley Farms developed the property and constructed 208 single-family houses with a range of lot sizes. (*Id.*)

City council held a hearing on Mindale Farms' application on March 10, 2022. (*Id.* ¶ 67.) City council denied the application. (*Id.* ¶ 75.) Besides community opposition to the project, city council members voiced opposition to the project because they wanted to see larger homes, with larger frontages, and homes that were not so close together, among other things. (*Id.* ¶¶ 72–73.) Mindale Farms alleges these reasons were pretextual because Ripely Farms had similar lot sizes and frontages as the proposed Mindale Farms project. (*Id.* ¶ 73.)

After the denial of Mindale Farms' application, city council met on March 24, 2022. (*Id.* ¶ 80.) At that meeting, city council proposed an ordinance which would eliminate the R-6 zoning district. (*Id.*) On May 12, 2022, city council met to discuss the ordinance and unanimously approved it, repealing the R-6 zoning district. (*Id.* ¶ 98.) Like the hearing on Mindale Farms' application, city council heard opposition to the R-6 zoning district from members of the community. (*Id.* ¶¶ 95–96.)

### B. Procedural History

Mindale Farms filed its complaint on March 2, 2023. (Doc. 1.) The complaint alleged the following claims: violation of the Equal Protection Clause (Count One); regulatory taking without just compensation (Count Two); First Amendment retaliation (Count Three); violation of the Fair Housing Act and Americans with Disabilities Act (Count Four); and declaratory judgment (Count Five). (*Id.* at 17–22.)[1] Tallmadge answered on April 24, 2023. (Doc. 9.) On August 10, 2023, Tallmadge filed a motion for judgment on the pleadings under Rule 12(c). (Doc. 21.) The Court issued a Memorandum Opinion and Order on March 20, 2024, granting Tallmadge's motion in full. (Doc. 37.)

To the extent Mindale Farms contemplated filing an amended complaint, the Court instructed Mindale Farms to file any amended complaint within thirty (30) days. (*Id.*) On April 19, 2024, Mindale Farms moved for leave to file its amended complaint which purportedly addressed the deficiencies identified in the Court's Memorandum Opinion and Order.[2] (Doc.

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

[2] Mindale Farms did not attempt to replead the Fair Housing Act or Americans with Disability Act claims (Count Four).

38.) Tallmadge opposed the motion for leave, renewing its Rule 12(c) arguments to the proposed amended complaint.[3] (Doc. 39.)

## II.   LEGAL STANDARD

A court may deny a motion for leave to file an amended complaint where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Carson v. United States Off. of Special Couns.*, 633 F.3d 487, 495 (6th Cir. 2011) ("leave to amend should be denied if the amendment . . . would be futile.") (citation omitted). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

Courts assess motions for leave to file an amended complaint under the Rule 12(b)(6) standard. Meaning, courts must "construe the complaint in the light most favorable to [the] plaintiff[], accept all the well-pleaded factual allegations as true, and draw all reasonable inferences in [the] plaintiff['s] favor." *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019). The factual assertions in the complaint must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

---

[3] On May 7, 2024, Tallmadge moved for leave to file an amended memorandum in opposition to Mindale Farms' motion for leave to file an amended complaint. (Doc. 40.) Mindale Farms filed a response that same day, indicating it did not oppose the filing of the amended memorandum in opposition so long as it had time to respond. (Doc. 42.) The Court granted Tallmadge's motion and the controlling memorandum in opposition is Doc. 40-2.

### III. ANALYSIS

Tallmadge primarily argues Mindale Farms' proposed amended complaint is futile because the amended complaint fails to cure deficiencies from the original complaint. (Doc. 40-2 at 1197.) The Court takes each claim in turn.

#### A. Equal Protection

In Count One, Mindale Farms pursues an Equal Protection Clause claim under a class-of-one theory. (Doc. 38-2 at 726.) A plaintiff making class-of-one claims must show two elements: (1) that the government "treated the plaintiff differently from others similarly situated," and (2) that "there is no rational basis for such difference in treatment." *Andrews v. City of Mentor*, 11 F.4th 462, 473 (6th Cir. 2021) (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)). The Court initially found Mindale Farms did not sufficiently plead either element.

##### i. Similarly Situated

Mindale Farms alleged another project, Ripley Farms, was a sufficient comparator. (Doc. 1 at 6.) Ripley Farms was a former farm site which Tallmadge approved for rezoning as an R-6 zoning district. (*Id.*) In the complaint, Mindale Farms alleged Ripely Farms was a similarly zoned lot (about 100 acres) and was a former farm where farming was no longer feasible. (*Id.*) The Court found this insufficient because the similarities, as pleaded, were too generic. (Doc. 37 at 681.) These few similarities, the Court explained, were not enough considering the many other possible differences between the two plots. (*Id.*)

Mindale Farms now argues its proposed amended complaint cures these pleading deficiencies and by sufficiently alleging it is similarly situated to Ripely Farms. (Doc. 38-1 at 701.) In the proposed amended complaint, Mindale Farms includes additional allegations,

including that Ripely Farms is near Mindale Farms and is geographically and topographically similar. (Doc. 38-3 at 738.) Mindale Farms also alleges the Ripley Farms plan included similar lot sizes, similar distances between homes, and similar frontages as the Mindale Farms plan. (*Id.* at 747.) Lastly, Mindale Farms alleges both projects have similar non-detrimental effects on the health, safety, and welfare of the community, including impact on traffic and wetlands. (*Id.* at 753.) These are some of the precise deficiencies the Court identified when dismissing the original complaint. (Doc. 37 at 680–81.)

Tallmadge argues these allegations are still not sufficient because the allegations lack any details regarding the two plots, such as acreage, number of units, or description of access points, among other things. (Doc. 40-2 at 1200.) However, "[w]hen evaluating whether parties are similarly situated, 'courts should not demand exact correlation, but should instead seek relevant similarity.'" *Andrews*, 11 F.4th at 474 (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864–64 (6th Cir. 2012)). Here, under *Andrews*, Mindale Farms' proposed amended complaint sufficiently alleges facts which, if true, demonstrate Mindale Farms is similarly situated to Ripley Farms. *See* 11 F.4th at 475.

        **ii.**        **Rational Basis**

Mindale Farms alleged Tallmadge had no rational basis for treating it differently from Ripley Farms. (Doc. 1 at 18.) A plaintiff raising class-of-one claims bear a particularly "heavy burden" to show no rational basis for different treatment. *Shavers v. Almont Twp.*, 832 F. App'x 933, 937–38 (6th Cir. 2020) (quoting *Loesel v. City of Frankenmuth*, 692, F.3d 452, 461–62 (6th Cir. 2012)). A party can meet this burden by either (a) "negat[ing] every conceivable basis which might support the government action," or (b) "demonstrating that the challenged government action was motivated by animus or ill-will." *Warren*, 411 F.3d at 711 (citation omitted).

The Court found Mindale Farms did not plead sufficient facts that either negates all conceivable bases which might support the government action or plead facts which demonstrate the decision was motivated by animus or ill-will.  (Doc. 37 at 682.)  To the contrary, the complaint identified facts which indicate Tallmadge did have a rational basis for its decision—concerns about the aesthetics of the proposed development among them.  (*Id.*)  Because the Supreme Court and Sixth Circuit has found aesthetic concerns a valid rational basis for government action (*id.*), the Court found Mindale Farms failed to satisfy this element (*id.*).

Mindale Farms argues the proposed amended complaint cures the deficiencies relating to the second element.  (Doc. 38-1 at 703; Doc. 45 at 1645–47.)  Mindale Farms does not argue—nor does the proposed amended complaint plead—Tallmadge's decision was motivated by animus or ill-will.  Instead, Mindale Farms pleads the only stated reason for Tallmadge's denial—issues with the aesthetics of the plan—was pretextual.  (Doc. 38-1 at 703.)  In support, Mindale Farms pleads the Ripley Farm project aesthetics are substantially similar to the proposed aesthetics of Mindale Farms.  (Doc. 38-3 at 746.)  Thus, if Tallmadge's proposed reasoning is that it denied Mindale Farms' plan because of aesthetics, that decision was pretextual and lacks a rational basis.  (Doc. 38-1 at 703; Doc. 45 at 1646.)  Tallmadge argues the City's decision was not pretextual, and that Mindale Farms' argument moots the no-rational-basis element because it combines the "substantially situated" element and the "no-rational-basis" element.  (Doc. 40-2 at 1201–02.)

The Court accepts as true the allegations in the proposed amended complaint.  Tallmadge asserts councilmembers were concerned about the aesthetics of the proposed development.  (Doc. 40-1 at 1202.)  These concerns are a rational basis to deny the rezoning.  *Shoemaker v. City of Howell*, 795 F.3d 553, 567 (6th Cir. 2015).  However, Mindale Farms pleaded these concerns

were pretextual, and therefore, could not be supported by a rational basis. Taken as true, Mindale Farms has alleged sufficient facts that rebut the "likely non-discriminatory reasons for disparate treatment." *See Andrews*, 11 F.4th at 478.

### B. Regulatory Taking

In regulatory takings claims like the one asserted here, courts utilize the balancing test set forth in *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978.) Courts must balance three factors: (1) "[t]he economic impact of the regulation"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." *Id.* at 124.

After applying the *Penn Central* test, the Court found Mindale Farms' partial takings claim was insufficiently pleaded because Mindale Farms did not allege Tallmadge's denial of rezoning disrupted any investment-backed expectations. (Doc. 37 at 685.) First, Mindale Farms did not allege any reasonable expectation to develop the property since the lot was never zoned as an R-6 district. (*Id.*) That is, because the property was not zoned R-6 before Mindale Farms' acquisition of the property, Mindale Farms did not have a reasonable expectation to develop the property under the R-6 zone. (*Id.*) Second, Mindale Farms did not allege any facts that its interests were investment-backed in a venture to develop the property beyond simply filing a rezoning application. (*Id.*) The Court also found the character of the governmental action did not support a claim here because Tallmadge's action cannot be characterized as a physical invasion, nor did Tallmadge's action lack a legitimate public purpose. (*Id.* at 685–86.)

Mindale Farms' proposed amended complaint includes additional allegations that it worked with Tallmadge to establish the R-6 zoning district. (Doc. 38-3 at 736.) Further, Mindale Farms alleges Tallmadge instructed it to work with a third party to analyze and make

recommendations for the development of the property, which resulted in the R-6 zoning district. (*Id.* at 736–37.)  Together, Mindale Farms alleges it worked with Tallmadge to develop the R-6 zoning district specifically for the development of the property, and therefore, Mindale Farms had a reasonable expectation Tallmadge would approve the rezoning of the property.  (*Id.* at 737; Doc. 38-1 at 704.)

Tallmadge argues the proposed amendments do not cure the partial regulatory takings claim.  (Doc. 40-2 at 1203.)  Primarily, Tallmadge argues Mindale Farms still does not allege a reasonable expectation, including because the parcel was never zoned R-6 and the rezoning depended on a discretionary decision for which no express assurances were made.  (Doc. 40-2 at 1203.)

Mindale Farms relies on *Lifestyle Cmtys., Ltd. v. City of Worthington*, No. 22-cv-1775, 2023 WL 2527245, 2023 U.S. Dist. LEXIS 44143 (S.D. Ohio Mar. 15, 2023).  But *Lifestyle* only highlights the deficiencies in Mindale Farms' proposed amended complaint.  In *Lifestyle*, plaintiff—a developer—sought to purchase property in Worthington and develop it for mixed residential and commercial use.  *Id.* at *2–3.  Plaintiff met with Worthington officials about its plan.  *Id.* at *3.  The city "committed that, if Lifestyle would develop the Property in accordance with the Land Use Plan, the City would provide the necessary approvals for the project.  Based on the City's assurances, Lifestyle purchased the property."  *Id.*  Here, however, Mindale Farms has not alleged it bought the property with any such assurances from Tallmadge.  Indeed, the property has never been zoned R-6.  While Mindale Farms alleges it worked together with Tallmadge to create the R-6 district (Doc. 38-3 at 736–37), this cannot have created a *reasonable* expectation because the proposed plan still needed city approval, something Mindale Farms does not allege Tallmadge promised, committed to, or gave any assurances of.

Mindale Farms also relies on *Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir. 2014). But in *Sherman*, the plaintiff bought the property at issue to develop residential housing when it was already zoned for residential development, the exact thing plaintiff sought to do. *Sherman*, 752 F.3d at 565 ("When [plaintiff] bought [the property], it was already zoned for residential use. His reasonable expectation, therefore, was that he would begin recouping that investment after a reasonable time to get the Town's approval on at least some form of development."). Therefore, the plaintiff had a reasonable expectation of being able to develop the property for that use. *Id.* Here, Mindale Farms did not buy the property when it was zoned R-6. *See Oberer Land Devs. Ltd. v. Sugarcreek Twp.*, No. 21-3834, 2022 WL 1773722, 2022 U.S. App. LEXIS 15290, *16 (6th Cir. June 1, 2022) (finding no reasonable investment-backed expectation because "[t]his case is not one where a developer bought their property in reliance on a state of affairs that did not include the challenged regulatory regime.") (citation omitted).

Moreover, the proposed amended complaint still does not plead any "investment-backed" interest. While there are allegations that Mindale Farms worked with a real estate developer that spent time and money developing plans for the property, there are no allegations Mindale Farms invested any money other than money to create a development plan and file a rezoning application.

Mindale Farms' proposed amended complaint also does change the Court's analysis regarding the "character of the governmental action." (Doc. 37 at 685–86.) Nothing in the proposed amended complaint changes this factor, and it still weighs against finding a partial taking.

Lastly, Mindale Farms argues it is challenging both its reasonable expectation to rezone the property as R-6, as well as the current designation of the property as R-1. (Doc. 45 at 1648.)

Mindale Farms argues it has a reasonable expectation to make an economically viable use of the property and the current designation of R-1 forecloses any economically viable use. (*Id.*) Although Mindale Farms can challenge the denial of rezoning to a R-6 district and challenge the current status of the property as a R-1 district, *Andrews*, 11 F.4th at 473, the Court assesses both claims pursuant to *Penn Central*.

As the Court found in its earlier ruling on Tallmadge's motion to dismiss, Mindale Farms pleaded facts which demonstrate the current zoning as R-1 has prevented Mindale Farms from realizing an economically valuable use of the property. But, as discussed above, Mindale Farms has not pleaded facts sufficient to balance the *Penn Central* test in its favor. Mindale Farms fails to plead facts that either demonstrate the regulation interfered with an investment-backed expectation or that the character of the governmental regulation can be characterized as a physical invasion by the government. And while Mindale Farms argues the current zoning of the property makes any development economically infeasible, "[t]he denial of [plaintiffs'] 'ability to exploit a property interest' that they thought *might* be 'available for development' is insufficient to establish a regulatory taking." *Oberer Land Devs.*, 2022 WL 1773722, 2022 U.S. App. LEXIS 15290, *16 (quoting *Penn Cent. Transp. Co.*, 438 U.S. at 130) (emphasis in original).

On balance, the *Penn Central* test still does not weigh in Mindale Farms' favor even when considering their proposed amended complaint. As a result, the Court finds the proposed amended complaint futile with respect to the regulatory takings claim.

### C. First Amendment Retaliation

Mindale Farms alleged a First Amendment retaliation claim for petitioning the rezoning of the property. (Doc. 1 at 19.) To state a First Amendment retaliation claim, a plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action

was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Mindale Farms alleged it engaged in protected First Amendment speech when it petitioned for rezoning, and Tallmadge retaliated against Mindale Farms' speech when it denied the application and repealed the R-6 zoning classification altogether. (Doc. 1 at 19.) The Court found Mindale Farms sufficiently alleged protected conduct and an adverse action, but that Mindale Farms failed to allege a causal connection showing the adverse action was motivated by Mindale Farms' conduct. (Doc. 37 at 687.) The only allegation relating to causation was the timing of the repeal. (*Id.*) Thus, the Court found the complaint did not sufficiently plead facts which showed Mindale Farms eliminated R-6 zoning *because of* Mindale Farms' petition. (*Id.* at 687–88.)

Mindale Farms' proposed amended complaint includes additional facts about city council's actions and statements in repealing the R-6 zoning district. (Doc. 38-3 at 747–51.) For instance, after denying Mindale Farms' application, city council discussed how public opposition to Mindale Farms' application showed residents no longer wanted the R-6 district to be a "tool in the toolbox for developers to use." (*Id.* at 748.) Mindale Farms also alleges city council explicitly suggested that the R-6 district be removed because of Mindale Farms' application. (*Id.* at 750.) And residents speaking about the repeal of the R-6 district referenced Mindale Farms. (*Id.*)

Tallmadge argues Mindale Farms ignores the retaliatory animus element of a First Amendment retaliation claim. (Doc. 40-2 at 1210.) That is, Tallmadge argues Mindale Farms

failed to allege—and the proposed amended complaint does not cure—retaliatory animus, spite, or hostility in response to Mindale Farms' application. (*Id.*) Mindale Farms disputes whether the action must have some degree of hostility. (Doc. 45 at 1652.) Instead, Mindale Farms argues all that is necessary is that Tallmadge repealed the R-6 district because of Mindale Farms' petition. (*Id.*)

This count was previously dismissed for failure to sufficiently plead retaliatory animus. (Doc. 37 at 687–88.) Mindale Farms includes a series of new allegations relating to public statements about the development project and council's reaction to those statements (Doc. 38-3 at 750–51), but as before, these allegations relate to the underlying zoning policy concerns over the use of the land, not conduct relating to petitioning activity. Therefore, the proposed amended complaint is futile with respect to the First Amendment retaliation claim.

IV.     **CONCLUSION**

For the reasons explained above, Mindale Farms' motion for leave to file an amended complaint is GRANTED as to its Equal Protection claim (Count One) and DENIED as to its regulatory taking claim (Count Two) and First Amendment retaliation claim (Count Three). Mindale Farms has ten (10) business days from the date of this Order to submit an amended complaint consistent with the Order.

**IT IS SO ORDERED.**

Date: February 21, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE